IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

RONALD J.,[1]

        Plaintiff,

  v.

COMMISSIONER, Social Security
Administration,

        Defendant.

Case No. 3:17-cv-01508-SU

**OPINION
AND ORDER**

SULLIVAN, United States Magistrate Judge:

    Plaintiff Ronald J. brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner partially denied plaintiff's application for

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and initial of the last name for non-governmental parties. Where applicable, the same designation is used for the parties' immediate family members.

Page 1 – OPINION AND ORDER

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.* The Court REVERSES the Commissioner's decision and REMANDS for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed for DIB on March 28, 2014, and for SSI on August 11, 2014, alleging a disability onset date of September 8, 2013. Tr. 22, 165, 167.[2] These claims were denied initially and upon reconsideration. Tr. 22, 65-72, 75-89, 90-104. Plaintiff requested a hearing, which was held on March 15, 2016, before Administrative Law Judge ("ALJ") S. Pines. Tr. 40-63. Plaintiff appeared and testified at the hearing, represented by counsel; a vocational expert ("VE"), Robert Gaffney, also testified. *Id.* On April 26, 2016, the ALJ issued a partially favorable decision finding that plaintiff was under a disability as defined by the Act from September 8, 2013, through July 27, 2015. Tr. 29-30. However, the ALJ found that beginning on July 28, 2015, plaintiff's disability ended due to medical improvement. Tr. 31. Plaintiff requested Appeals Council review, which was denied July 31, 2017. Tr. 1-6. Plaintiff then sought review before this Court.[3]

## FACTUAL BACKGROUND

Plaintiff was born in 1959 and completed high school. Tr. 29, 46, 65. He suffers from shingles, post-herpetic neuralgia nerve pain, polyneuropathy, tinnitus, spinal disorder, and depression. Tr. 65, 75, 222, 286. Plaintiff previously worked as an industrial and service salesmen, sales engineer, and account representative. Tr. 203-07.

## LEGAL STANDARD

---

[2] Citations "Tr." refer to indicated pages in the official transcript of the Administrative Record filed with the Commissioner's Answer. (Docket Nos. 11, 12).
[3] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636. (Docket No. 9).

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c); 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

The ALJ first made findings regarding plaintiff's disability claim from September 3, 2013, through July 27, 2015. Tr. 26-30. The ALJ found that plaintiff met the insured status

requirements of the Act through December 31, 2018. Tr. 26. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. *Id.* At step two, the ALJ found that plaintiff had these following severe impairments: post-herpetic neuralgia, spinal disorder, and depressive disorder. *Id.* At step three, the ALJ found that plaintiff did not have an impairment or combination thereof that met or equaled a listed impairment. *Id.* The ALJ found that, during the time period at issue, plaintiff had the RFC to perform light work with various physical limitations, and that plaintiff "was likely to be on task less than eighty percent of the workday." Tr. 26-27. At step four, the ALJ determined that plaintiff was unable to perform his past relevant work. Tr. 29. At step five, the ALJ found that from September 8, 2013, through July 27, 2015, and considering plaintiff's age, education, work experience, and RFC, no jobs existed in significant numbers in the national economy that plaintiff could have performed. *Id.* Accordingly, the ALJ found that plaintiff was under a disability as defined by the Act from September 8, 2013, through July 27, 2015. Tr. 30.

The ALJ next found that medical improvement occurred as of July 28, 2015. Tr. 31. The ALJ compared plaintiff's prior RFC and found that plaintiff's functional capacity for basic work activities had increased. *Id.* The ALJ found that, beginning on July 28, 2015, plaintiff had the RFC to perform light work with essentially the same physical limitations, but without the limitation that plaintiff would be off task 20% of the workday. *Id.* The ALJ found, beginning July 28, 2015, that plaintiff was capable of performing past relevant work as a sales representative. Tr. 32-33. The ALJ also made an alternative finding that, "considering [plaintiff's] age, education, work experience, and RFC, [plaintiff had] acquired work skills from past relevant work that [were] transferable to other occupations with jobs existing in significant numbers in the national economy." Tr. 33. Finally, the ALJ applied Medical-Vocational Rule

202.07, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.07, which directed a finding of "not disabled," and so the ALJ found that plaintiff's disability ended as of July 28, 2015. Tr. 33-34.

## ANALYSIS

Plaintiff argues that the ALJ erred in finding medical improvement, specifically, that the ALJ (1) failed to base his finding of medical improvement on "symptoms, signs, and laboratory findings"; (2) improperly rejected plaintiff's treating neurologist's opinion for the period after the ALJ's finding of medical improvement; and (3) improperly rejected plaintiff's subjective symptom testimony.

### I. Medical Improvement

Where an ALJ finds a claimant disabled for a "closed period" of time and thereafter finds the claimant to have medically improved, the ALJ must conduct a further multi-step sequential evaluation. *See* 20 C.F.R. §§ 404.1594, 416.994; *see also Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (explaining that a "closed period" case occurs "where the ALJ finds in a *single* decision that the claimant was disabled for a closed period of time but has since medically improved") (emphasis in original). For a DIB claim, the evaluation essentially consists of eight steps; and for an SSI claim, the evaluation essentially consists of seven steps. *See* 20 C.F.R. §§ 404.1594(f)(1)-(8), 416.994(b)(5)(i)-(vii); *see also Attmore*, 827 F.3d at 874.[4]

At the corresponding relevant steps of the medical improvement sequential evaluation, the ALJ must determine whether "medical improvement" in the claimant's condition has

---

[4] Although not in dispute in this action, what distinguishes the eight-step DIB evaluation from the seven-step SSI evaluation is that step one of a DIB claim analysis requires a determination whether the claimant is engaged in substantial gainful activity; that step is not a relevant factor for purposes of an SSI claim. *Compare* 20 C.F.R. § 404.1594(f)(1), *with* 20 C.F.R. § 416.994(b)(5)(i).

occurred.⁵ *See* 20 C.F.R. §§ 404.1594(f)(3), 416.994(b)(5)(ii). The regulations explain that medical improvement is "any decrease in the medical severity [of a claimant's] impairment(s)," and that this determination "must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [a claimant's] impairment(s)." *See* 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i); *see also Attmore*, 827 F.3d at 875.

Plaintiff argues that the ALJ failed to base his finding of medical improvement on "symptoms, signs, or laboratory findings." The Commissioner responds that the ALJ's finding was reasonable and supported by substantial evidence in the Record. Specifically, the Commissioner relies on the ALJ's finding that plaintiff's depression "was no longer severe because that [sic] he had decreased his use of opiate medication, and his depression was no longer severe as evidenced by his ability to continue to exercise and lose weight and rehabilitate a house." Def. Br., at 7 (Docket No. 17).

Substantial evidence does not support the ALJ's finding of medical improvement. First, while there is evidence that plaintiff was able to decrease opiate medication use for a time, by October 2015, plaintiff's hydrocodone dose increased and his opiate use would continue indefinitely. Tr. 387. The ALJ reasoned that, because plaintiff's opiate use had decreased for a time, his depression was no longer severe.⁶ The Record does not support the ALJ's finding. Although plaintiff attempted to reduce narcotic pain medication use in July 2015, that attempt was ultimately unsuccessful. Tr. 389. By October 2015, his hydrocodone dose had increased to

---

⁵ This occurs at step three of the eight-step evaluation for a DIB claim and step two of the seven-step evaluation for an SSI claim. *See* 20 C.F.R. §§ 404.1594(f)(3), 416.994(b)(5)(ii).

⁶ The Commissioner asserts that plaintiff waived any challenge to the ALJ's analysis of the improvement in depression. However, the rule of waiver on judicial review is discretionary and "when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed," the Court may exercise its discretion and consider the issue. *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1322 (9th Cir. 2012). The Court finds it appropriate to exercise its discretion here.

"30mg total daily, and it control[led] his pain better." Tr. 386. Plaintiff's treating physician explained that plaintiff had "been unable to taper, although he [was] a fairly low risk candidate for abuse or diversion," and noted it was "not unreasonable to continue indefinitely[.]" Tr. 387.

Second, the Ninth Circuit has consistently instructed, specifically in the context of claimant suffering from depression, that the ALJ must examine "evidence in the broader context of [a claimant's] impairment." *Attmore*, 827 F.3d 872, 877 (citation omitted); *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her . . . ."). "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). As such, the Commissioner's reliance on plaintiff's weight loss, alert presentation with linear and logical speech, as well as normal psychomotor behavior did not "constitute examples [of improvement] of a broader development." *Attmore*, 827 F.3d at 877 (citation omitted).

The Commissioner next argues that the ALJ properly based his finding of medical improvement on objective medical evidence. The Commissioner relies on a 2014 report that plaintiff's pain medication caused sedation and made "it tough to complete sentences." Tr. 27 (citing Tr. 335). The Commissioner highlights that by January 2015 plaintiff was no longer taking Elavil, that treatment notes reported plaintiff as presenting as "alert and in no apparent distress," and that there was a lack complaints of sedation after July 2015 when on hydrocodone. Def. Br., at 8 (Docket No. 17).

The Record fails to support the Commissioner's contentions.⁷ Plaintiff reported that hydrocodone did in fact cause sedation independent of Elavil. *E.g.*, Tr. 358, 360. Presenting as alert and without apparent distress does not entail that someone taking narcotic pain medications would not have difficulty concentrating in the workplace. Although the Commissioner is correct that the Record does not contain direct evidence that plaintiff's hydrocodone use caused sedation after June 2015, on this Record the mere lack of complaints of sedation during a period where plaintiff regularly required narcotic medication is insufficient to demonstrate that sedation side effects wholly subsided. *Cf. Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983). In fact, the Record here supports the opposite conclusion. For example, plaintiff reported that hydrocodone did, in fact, cause sedation to the point that it kept him from operating a motor vehicle at a lower dose in the past. Tr. 362. The Record also contains evidence that plaintiff increased his hydrocodone dosage from 20mg to 30mg per day subsequent to the ALJ's finding of medical improvement. Tr. 386-87. As such, substantial evidence does not support the ALJ's finding of medical improvement. *See Attmore*, 827 F.3d at 879.⁸

## II. Medical Opinion Evidence

The weight given to the opinion of a physician depends on whether the physician is a treating, examining, or nonexamining physician. *Holohan*, 246 F.3d at 1202 (citing 20 C.F.R. § 404.1527). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician);

---

⁷ First, the ALJ's decision did not rely on plaintiff's discontinuing his Elavil use and is therefore a *post hoc* rationalization upon which this court may not affirm. *See Bray v. Comm'r*, 554 F.3d 1219, 1225 (9th Cir. 2009). For this same reason, the Commissioner's reliance on the treatment note from Matthew Keegan, D.O., regarding plaintiff's side effects and assistance of his neighbor with yardwork fails. *Id.*

⁸ The Commissioner's briefing regarding medical improvement asserts that the ALJ properly rejected Dr. Keegan's opinion. Because plaintiff does not challenge the doctor's opinion in this action, the Court declines to disturb the ALJ's findings on this issue.

*Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. "An ALJ can satisfy the 'substantial evidence' requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quotation omitted).

Plaintiff argues that the ALJ improperly rejected the limitations opined by Emma Burbank, M.D., his treating neurologist. Dr. Burbank began treating plaintiff at least as early as December 2014. Tr. 358. In March, 2016, Dr. Burbank assessed plaintiff with severe constant pain, paresthesias/dysesthesias, and numbness in his right lower extremity. Tr. 474. Dr. Burbank opined that plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 45 minutes at any one time; stand and/or walk three hours of an eight hour workday; sit five minutes at any one time; and sit one hour of an eight hour workday. Tr. 475. Finally, she opined that plaintiff would be off-task 50% of the workweek and would miss 16 hours (the equivalent of two full workdays) or more work per month from even a simple routine sedentary job due to severe pain. Tr. 476.

The ALJ found that while there was "evidence to support these limitations prior to July 27, 2015, the evidence after this time suggest[ed] marked improvement such that [plaintiff] was able to work on rehabilitating a home and doing yard work for a neighbor." Tr. 32. Thus, the ALJ implicitly rejected Dr. Burbank's opinion. Because Dr. Burbank's opinion was contradicted by Jacqueline Farwell, M.D., and Michael Dennis, Ph.D., the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Burbank's opined limitations.

The Commissioner contends that the ALJ provided specific and legitimate for rejecting Dr. Burbank's opinion based upon plaintiff's activities, and directs the Court to *Morgan v. Commissioner*, 169 F.3d 595, 602 (9th Cir. 1999). The Commissioner asserts that the claimant's activities in *Morgan* of "maintaining a one-acre garden and assisting with the restoration of an old house" as supporting rejection of a medical opinion and are similar to plaintiff's reported activities of rehabilitating a home and doing yard work for a neighbor. *Morgan* is distinguishable, however, because the ALJ there provided a numerous permissible rationales to reject the claimant's treating physician's opinion, including:

> (1) "evidence [that] established that [the claimant] adequately copes with the social aspects of daily living, continues to maintain some friendships, and manifests above-average intelligence and other cognitive abilities"; (2) "inconsistenc[ies] between" the examining psychologist and claimant's treating physician's opinion; (3) the treating physician's opinion was "premised on [the claimant's] subjective complaints, which the ALJ discounted"; and (4) "internal inconsistencies within [the treating physician's] and [examining psychologist's] reports, and the inconsistencies between their reports[.]"

*Id*. at 602-03. There are no findings here similar to *Morgan*'s, and that case does not control.

The ALJ's decision arguably supplied an additional rationale for rejecting Dr. Burbank's opinion, namely, the ALJ's single-sentence discussion of a January 2016 treatment note.[9] The ALJ noted that at the appointment, plaintiff "had tenderness to palpation in the lumbar spine," but "no motor or sensory deficits." Tr. 32. Notably, the Record citation concerns plaintiff's examination for kidney stones and is not an examination by Dr. Burbank. Tr. 434. The Commissioner asserts that the ALJ rejected Dr. Burbank's opinion because it was inconsistent with objective medical evidence. The assertion lacks merit, however, because an "ALJ must do

---

[9] The Commissioner also supplies a number of *post hoc* citations to the Record in support of her contention the ALJ also rejected Dr. Burbank's opinion based upon inconsistency with objective medical evidence. The Court, however, may not consider these rationales because they were not articulated by the ALJ. *See Bray*, 554 F.3d at 1225.

more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Moreover, it is unclear to the Court how the treatment note contradicts Dr. Burbank's opined limitations. A citation to an isolated treatment note is akin to an ALJ impermissibly selecting isolated evidence to support the conclusion a claimant is not disabled. *See Holohan*, 246 F.3d at 1207 (holding that an ALJ may not "selectively rel[y] on some entries in [a claimant's] records and ignore[] the many others that indicated continued, severe impairment").

The ALJ failed to set "out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings," and so did not provide a specific and legitimate reason to discount Dr. Burbank's opinion. *Garrison*, 759 F.3d at 1012.

### III.     Plaintiff's Testimony

At the March 15, 2016, hearing, plaintiff testified he was unable to work because of chronic pain that he has endured "24/7" for "two[-]and[-]half long years." Tr. 49. He explained the pain radiated from his buttocks and thighs and that "any pressure [caused] burning beyond relief." *Id.* This pain precluded him "sit[ting] . . . and it impacts all areas [of his] life." *Id.* He testified that he can stand and sit for only limited periods and that he has to lie down and "get the weight off [his] . . . right side." Tr. 50. On a typical day he has breakfast and spends some time gardening peppers and herbs and tries to help with cooking because "it's something [he] contribute[s] to the household since [he] can't contribute otherwise." Tr. 51. He does "dishes once in a while" and is able to do "some" grocery shopping. *Id.* He later clarified that his grocery shopping involves walking ten blocks, during which he requires taking breaks, and that going to the store takes "a half day." Tr. 53. At the conclusion of plaintiff's counsel's inquiry, plaintiff explained that he "wish[ed] [he] wasn't here, [he] wish[ed] [he] was still working and

providing an income and feeling self-worth[.]" *Id.* The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are generally consistent with the evidence from September 8, 2013 through July 27, 2015." Tr. 28.

Plaintiff assigns error to the ALJ's evaluation of his subjective symptom testimony. Plaintiff correctly points out that the ALJ never actually made an adverse credibility determination, but nevertheless argues that (1) objective medical evidence supported his testimony; (2) any improvement he did have should have been evaluated in the context of the overall diagnostic picture; and (3) the ALJ failed to provide sufficiently specific reasons for rejecting his allegations after July 28, 2015. The Commissioner partially responds to plaintiff's arguments and asserts the ALJ rejected plaintiff's testimony after July 29, 2015, because it was inconsistent with the medical record and daily activities.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. First, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptoms, but only to show that it could reasonably have caused some degree of the symptoms. *Id.* In the second stage of the analysis, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ must specifically identify the testimony he does not credit and must explain what evidence undermines the testimony. *Holohan*, 246 F.3d at 1208. General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Id.* In order to discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the

court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

Here, the ALJ performed the two-stage analysis, and found plaintiff's testimony "generally consistent with the evidence from September 8, 2013 through July 27, 2015." Tr. 28. As cited above, plaintiff produced objective medical evidence of impairments which could reasonably be expected to produce some degree of symptoms. To the extent the ALJ implicitly rejected plaintiff's testimony after July 27, 2015, the ALJ was required to identify the testimony he found not credible and to explain what evidence undermines that testimony. *Holohan*, 246 F.3d at 1208. In other words, in the absence of an adverse credibility determination, the Court cannot conclude that the ALJ properly rejected plaintiff's testimony. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); *Treichler v. Comm'r*, 775 F.3d 1090, 1103 (9th Cir. 2014).

Thus, the ALJ failed to provide a proper rationale for rejecting plaintiff's subjective symptom testimony.

## IV. Remedy

It lies within the district court's discretion whether to remand for further proceedings or to order an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citation and italics omitted). This "credit-as-true" rule has three steps: first, the court "ask[s] whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; second, if the ALJ has erred, the court "determine[s]

whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful"; and third, if the court "conclude[s] that no outstanding issues remain and further proceedings would not be useful," it may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding." *Treichler*, 775 F.3d at 1100-01 (quotations, citations, and alterations omitted). The court may then "remand to an ALJ with instructions to calculate and award benefits." *Garrison*, 759 F.3d at 1020. If, "even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the court should remand for further proceedings. *Id.* at 1021.

At the first step of the credit-as-true analysis, the Court finds that the ALJ erred in finding medical improvement, failing to provide a specific and legitimate reason to discount Dr. Burbank's opinions, and failing to provide a reason for rejecting plaintiff's subjective testimony after July 27, 2015. However, at step two, the Court finds that there remain outstanding issues to be determined and that further administrative proceedings would be useful, specifically, to (1) determine whether plaintiff did in fact medically improve after July 27, 2015; (2) properly analyze the erroneously rejected medical opinion evidence; and (3) assess plaintiff's subjective symptom testimony after July 27, 2015. Moreover, the Commissioner has pointed to evidence in the record that the ALJ overlooked, which may cast doubt on whether plaintiff is in fact disabled. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), *as amended* (Feb. 5, 2016). Remand for an immediate award of benefits is thus not appropriate. The Court therefore remands this case for further proceedings in accordance with this Opinion and Order.

## CONCLUSION

For these reasons, pursuant to 42 U.S.C. § 405(g), sentence four, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings in accordance with the above.

IT IS SO ORDERED.

DATED this 13th day of November, 2018.

                                                    /s/ Patricia Sullivan  
                                                  PATRICIA SULLIVAN  
                                                  United States Magistrate Judge